**Stephen SAVIA, et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. No. 85–3847.

United States District Court, District of Columbia.

April 27, 1987.

Robert D. Sokolove, Kornblut & Sokolove, Washington, D.C., for plaintiffs.

Rebecca L. Ross, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

### I. Background

Stephen Savia and the West Montgomery County Citizens Association brought this action in December of 1985 to enjoin the United States Postal Service ("USPS") from building a service postal facility on the "Moran" site in Potomac, Maryland. Plaintiffs' allegation is that since construction at the Moran site will impact a floodplain, the defendant had certain obligations, pursuant to 39 C.F.R. § 776, to assess and avoid this floodplain impact which it failed to fulfill. The case came before me on plaintiffs' motion for preliminary injunction, and defendant's motion to dismiss or, in the alternative, for summary judgment in May of 1986.

At that time, the defendant still had to undertake certain actions before commencing construction of the postal facility in question. The plaintiffs were therefore unable to make a showing that they would be irreparably injured absent an injunction and thus their motion for preliminary relief was denied on May 28, 1986. Defendant's dispositive motion was taken under advisement and a hearing was set for September 11, 1986, by which time the defendant was to have (1) finalized the site construction plan; (2) designed a storm water management plan and secured all appropriate approvals of said plan, including approval from the Water Resources Administration of the State of Maryland; (3) designed a sediment and erosion control plan and se-

cured all appropriate approvals of said plan, including approval from the Water Resources Administration of the State of Maryland; and (4) considered any comments submitted by plaintiffs and other interested parties regarding the final construction site plan, the storm water management plan and sediment and erosion control plan.

The September hearing was extended until December 1, 1986, at which time the defendant reported that it had accomplished the first three tasks outlined above. As to the fourth—the comments by the plaintiffs and other interested parties—the defendant reported that although plaintiffs had been sent copies of the pertinent designs, defendant had received no comments from them. Defendant represented that it was, therefore, prepared to proceed with construction of the postal facility.

Plaintiffs then, on December 11, 1986, sent the Court a document entitled, "Addendum to Pleadings by Plaintiff." In this document, plaintiffs introduced a new objection to the Moran site—namely, "that a criminal situation exists involving the purchase of the site in question." Addendum to Pleadings by Plaintiff at 2. Plaintiffs requested an *in camera* conference to discuss this matter. Despite the defendant's contention that this was "a delaying tactic [by the plaintiffs] which should not be tolerated," Def. Motion for Reconsideration of December 11, 1986 Order at 2, the requested *in camera* conference was set for January 12, 1987.

At the hearing, the Court was presented for the first time with allegations of impropriety on the part of postal officials in the choice of the Moran site for the Potomac postal facility. Over defendant's objections, the Court stated that it would defer action in this matter until the allegations reported by plaintiffs had been fully and completely investigated. The Court also directed that the investigation of the charges be expedited and that the Court be given a status report within thirty days.

In February, the defendant was given additional time to complete its investigation and report back to the Court. On March 13, 1987, the defendant reported that the investigation had been completed and fully reviewed by the U.S. Attorney's Office for the District of Columbia which found no basis for the institution of criminal proceedings. Accordingly, the case appears— after nearly one full year—to be ready for disposition.

## II. Issues in this Action

Plaintiffs' complaint and pleadings contained numerous allegations concerning defects in the defendant's site selection procedures. At oral argument the parties agreed that the issues could be narrowed to three. Transcript of May 2, 1986 at 12–13. Two of the issues concerned application of the defendant's floodplain regulations, and a third concerned whether the defendant complied with Executive Order 12372, which requires the defendant to consult with state and local governmental agencies.

### A. Consultation

There is little doubt given the extensive record in this case that defendant has undertaken serious and painstaking consultations with state and local governmental agencies about the placement of the Potomac facility. For instance, as far back as 1978, the USPS investigated five sites for a new facility in Potomac, each of which was disapproved by the Montgomery County Planning Board ("MCPB"). The defendant then investigated four more sites, before settling on the Moran location. Throughout the period between 1980–1982, facing opposition by other community groups, the USPS investigated other locations, until a total of 27 different sites had been considered for this postal facility. Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Def. Statement of Facts") at ¶¶ 7, 10–11.[1]

---

**1.** Plaintiffs attached to their opposition to defendant's summary judgment motion an "Opposition to Statement of Facts of Which There is no Genuine Dispute," in which they take issue with only four of the 28 paragraphs enumerated by the defendant. The unopposed paragraphs are taken as admitted. *See* Rules of the United

Even the National Capital Planning Commission ("the Commission"), which ultimately disagreed with the defendant's decision to build on the Moran site, understood the efforts USPS had undertaken to consider community input and elicit community support. In a report dated August 29, 1985, the Commission's Executive Director wrote:

> ... no site within the Potomac delivery area will be satisfactory to the Postal Service, community, [Montgomery County] Planning Board and the Commission. Attempts to select a site for the new facility has and continues to be one of the most difficult and frustrating planning matters that have come before the Commission. As noted, the history of planning for a new postal facility in this area of the County began in the early 1970's. Presently, at least 27 different alternative sites ... have been considered by the Postal Service and a majority of these have been discussed in some form with the community and the Planning Board staff. Many of these sites have also been formally submitted for review by the Planning Board and Commission.

Administrative Record ("Record"), Vol. 8 at 21.

█ It is clear that the decision to build on the Moran site was only made after an arduous eleven year process in which the defendant has carefully consulted with local governmental groups. The parties agree that the Executive Order requires nothing more and the plaintiffs have not persisted in this argument. Accordingly, I find that the defendant did comply with Executive Order 12372.

### B. Floodplain

Therefore the sole issue remaining in the case is the floodplain dispute. This dispute boils down to an argument about how to read—and thus how to apply—regulations entitled, "Floodplain Management and Protection of Wetlands Procedures," 39 C.F.R. § 776, which implement Executive Order 11988. The disputed part of the regulation concerns "New Construction," 39 C.F.R. § 776.5, and reads:

> (a) *Restriction of Consideration of Floodplain/Wetland.* During the evaluation of contending sites for a proposed project, floodplain and wetlands areas may be considered *only* when there is no practicable alternative site.
>
> (b) *Floodplain/Wetland Information.* Floodplain and wetland information must be compiled and considered throughout the facility planning process. If a proposed action will occur in or impact a floodplain or wetland site, specific floodplain or wetland information must be developed ...

39 C.F.R. § 776.5 (1986) (emphasis in original).[2]

The parties agree that some portion of the Moran site is in a floodplain. However, the defendant contends that it has situated the postal facility on the Moran site so that no construction will take place in the floodplain. Coven Affidavit at ¶ 6 and accompanying exhibits. Although no new construction will take place in a floodplain, plaintiffs nonetheless contend that § 776 applies. Therefore, plaintiffs argue, the defendant could only consider the Moran site after concluding that no "practicable alternative site" existed. 39 C.F.R. 776.5(a). Plaintiffs also allege that defendant failed to develop the necessary information outlined in § 776.5(b), which is required even if the construction is not in, but impacts on, the floodplain.

Defendant argues that plaintiffs failed to raise the floodplain issue at the administra-

---

States District Court for the District of Columbia 108(h) (formerly Rule 1–9(i)).

**2.** Until August of 1985, the first sentence of § 776.5(a) read, "During the evaluation of the preferred area for the proposed project, ..." instead of "During the evaluation of contending sites for a proposed project, ..." *Compare* 39 C.F.R. § 776.5(a) (July 1, 1984) *with* 39 C.F.R. § 776.5(a) (July 1, 1986). Although this change was made in the middle of the consideration of a Potomac site—specifically, after an environment assessment had been made but prior to the decision to purchase the Moran site—the minor semantic change has no bearing on the outcome of this lawsuit.

tive level and thus should be precluded from doing so here. Additionally, defendant contends that there will be no construction *in* a floodplain, so § 776.5(a) is inapplicable; and to the extent there is an impact on a floodplain, which the defendant denies there is, defendant argues that § 776.5(b) has been fully complied with.

I find that in selecting the Moran site, defendant did comply with § 776.5(a), but acted impermissibly in not following the requirements of § 776.5(b).

### 1. 39 C.F.R. § 776.5(a)

■ Section 776.5(a) proscribes consideration—for new construction projects of the postal service—of sites which are floodplains or wetland areas. Though part of the Moran site is in a floodplain, *none of the new construction is to take place in a floodplain.* I read § 776.5(a) as applying only when the defendant proposes to actually undertake construction in a floodplain or wetland area. Thus § 776.5(a)'s requirement that the defendant only select this site if there is no practicable alternative site does not apply to this case.

Such a reading is supported by Executive Order 11988, which the regulations implement. The Executive Order consistently admonishes agencies to avoid carrying out certain activities *in* floodplains. For instance, Section 2(a)(1) of the Executive Order reads, "Before taking an action, each agency shall determine whether the proposed action *will occur in a floodplain.*" Moreover, the section of the Executive Order which parallels § 776.5(a) of the implementing regulations, reads "If an agency has determined to ... allow an action *to be located in a floodplain,* the agency shall consider alternatives to avoid adverse effects and incompatible development in the floodplain." Executive Order 11988, § 2(a)(2) (emphasis supplied). *See also* Executive Order 11988, § 2(a)(3)–(4), § 2(b), § 3(b). The gist of the Executive Order therefore concerns actions to take place in floodplains—the construction proposed

here will not occur in a floodplain. Though the regulations might be more restrictive than the Executive Order they implement, there is nothing to indicate that is so in this case. Accordingly, it is appropriate to take guidance in interpreting the regulations from the Executive Order.

I am also concerned that reading the regulations as the plaintiffs would have me do would paralyze the government and render the regulations meaningless. For instance, according to the plaintiffs' argument, if the government bought a fifty acre site which included a ten foot strip of floodplain, and proposed to build a facility on the site miles from the floodplain, they could only do so if no practicable alternative site existed. Such a reading is unacceptable. The regulations must be read in a manner which comports with common-sense and allows them to be implemented in a realistic fashion. The proper reading of § 776.5(a) is that it refers to instances in which new construction is to take place in a floodplain. Thus it is not applicable to this case, and the defendant need not show that there is no practicable alternative to the Moran site.

### 2. 39 C.F.R. § 776.5(b)

Section 776.5(b) on the other hand requires the defendant to collect certain information if construction will have any impact on the floodplain. Defendant argues that the regulation is not applicable because construction of the postal facility will not impact the floodplain. Def. Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def. Br."), at 12–14. This argument is untenable because there is simply no question that the postal facility will have some impact on the floodplain. First, construction of the facility will take place within three feet of the floodplain. Second, the defendant's own environmental assessment acknowledges that there will be some impact on the floodplain, and gives some suggestion about how this impact might be mitigated.[3] *See* Final Expanded

---

**3.** The defendant hired independent consultants who conducted an environmental assessment to determine whether an environmental impact

statement would have to be made. The final version of the assessment, issued in May of 1985, found that the Moran site made "no signif-

Environmental Assessment at 54–55, 85, 88, Response 4. To support its proposition that there will be no impact on the floodplain, defendant cites a letter from the Environmental Protection Agency which states—not that there will be no impact, but rather—that there will be no *adverse* impact.[4] Def. Br. at 12 *citing* Record, Vol. 12, p. 6. It may well prove true that building on the Moran site will have no *adverse* impact on the floodplain, but this determination must be adequately substantiated in compliance with the applicable regulations.

Defendant does argue, in the alternative, that if the Court finds there will be an impact on the floodplain, then the Court should also find that the defendant has sufficiently compiled the information required by § 776.5(b). Def. Br. at 13–14. In support of the contention that the Postal Service has complied with the regulation, defendant can only point to conclusory statements made in the environmental assessment. The statements amount to several paragraphs and treat the floodplain issue only in the most cursory fashion. *See* Final Expanded Environmental Assessment at 54–55, 85, 88, Response 4. While this conclusory treatment might be appropriate were the site quite large and the floodplain quite remote, *see* discussion of § 776.5(a) *supra*, here we have proposed construction within three feet of the floodplain. Section 776.5(b) is written to deal with just this sort of precarious situation by mandating that before USPS constructs a new facility so close to the floodplain, it consider the consequences of such a project.

Specifically, § 776.5(b) compels the Postal Service to compile information which "as a minimum" must:

(1) Document whether the proposed action will directly or indirectly support floodplain development.

(2) Document the impacts a proposed action would have on the floodplain or wetland, including positive and negative; concentrated and dispersed; short-term and long-term.

(3) Document the flood hazard and risk to lives and property.

(4) Present the natural and beneficial floodplain values.

(5) Present measures which will preserve the floodplain, minimize harm to it, or restore it. Minimization of harm is assessed in terms of:

(i) The amount of investment at risk or the flood loss potential of the action itself.

(ii) The impact the action may have on others, and

(iii) The impact the action may have on floodplain values.

39 C.F.R. § 776.5(b).

■ The defendant has not compiled the information in either the depth or form that the regulation requires. Nowhere has the government documented, for instance, the short-term and long-term or concentrated and dispersed impact on the floodplain, as required by § 776.5(b)(2). Nowhere has the government documented the risk to lives and property, § 776.5(b)(3), nor has defendant undertaken a minimization of harm assessment (as required by § 776.-5(b)(5)) by indicating the amount of investment at risk or the flood loss potential.

Further, though plaintiffs never made clear what other provisions of the regulations they felt had not been followed by the defendant, after my own review of the entirety of § 776.5, I find that defendant has also not acted in accord with § 776.5(j). That section requires a design plan which includes measures necessary, *inter alia,* "to minimize the impact on human safety, health, and welfare," of actions impacting a

---

icant inpact" on the environment and thus concluded that an environmental impact statement was not necessary. Def. Br. at Ex. 1 ("Final Expanded Environmental Assessment"); Def. Unopposed Statement of Facts ¶ 22–23. USPS's Field Real Estate and Buildings Office then made a formal Finding of No Significant Impact on June 4, 1986. Record, Vol. 8 at 43.

4. On July 29, 1985, the United States Environmental Protection Agency, after reviewing the Environmental Assessment and the Finding of No Significant Impact, concluded "that this project would not create any *adverse* impacts, and [that] we have no objection to its implementation." Record, Vol. 12 at 6 (emphasis supplied).

floodplain. 39 C.F.R. § 776.5(j). The defendant has not pointed to, nor can I find, any evidence in the administrative record that this type of evaluation was undertaken.

Construction on the Moran site can not go forward unless and until the government is able to establish that it has complied with all of the requirements of the applicable regulation, 39 C.F.R. § 776.5.

III. Conclusion

I want to emphasize that I am cognizant of the difficult task facing the postal service in attempting to select a sight for the Potomoac facility. This is clearly a contentious project in the community and, as the National Capital Planning Commission stated, there appears to be no way to please every constituency involved. *See* page 656, *supra*. The situation is further aggravated because it appears that certain citizens may not be working towards a solution. To make matters worse the issues which are the subject of this lawsuit are late in coming.

Given this context, I would generally give deference to the determination of agency officials and experts—especially on complicated environmental issues such as these. However the problem in this case is that the proper determinations, about these important considerations, have not yet been made. Rather, it is clear that certain provisions of the floodplain regulations which apply to construction on the Moran site have not been followed. Given the serious consequences which these regulations are designed to protect against, I cannot allow the defendant to proceed without demonstrating that there has been compliance with the regulations both in form and in substance. Because the regulations have not been followed, the agency has acted impermissibly.

In conclusion, I find that the defendant complied with Executive Order 12372. I also find that 39 C.F.R. § 776.5(a) is not applicable to the proposed Moran facility because no new construction will take place in the floodplain. However, I find that because the construction will impact a floodplain, defendant was obligated to, but did not, comply with 39 C.F.R. § 776.5(b) and (j). Should the defendant wish to continue consideration of the Moran site, it can take steps consistent with this opinion to bring its actions into conformity with the floodplain regulations. Accordingly, I shall give the defendant forty-five (45) days to properly comply with the procedures set forth in the regulation. If after forty-five days the defendant has determined that it still wants to construct its facility on the Moran site, but has still not complied with the requirements of 39 C.F.R. § 776.5, I will, at that time, further entertain plaintiffs' motion for an injunction.

An appropriate order accompanies this memorandum.

United States District Court,
S.D. Florida,
Miami Division.